FILED
98 OCT 14 PM 12:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

TERESA GROSS MONTGOMERY, )
)
    Plaintiff, ) Civil Action No.
) CV-97-P-2761-S
-vs.- )
)
COOPER GREEN HOSPITAL, )
JEFFERSON COUNTY, ALABAMA, )
and THE JEFFERSON COUNTY )
COMMISSION, )
)
    Defendants. )

ENTERED
OCT 15 1998

## MEMORANDUM OPINION

The defendants filed this summary judgment motion on August 28, 1998. The motion was taken under submission as of September 29, 1998. After careful consideration of the briefs and evidentiary materials submitted by the parties, the court finds that the defendants' motion is due to be GRANTED.

### Facts[1]

The plaintiff, Teresa Gross Montgomery, is a white female employee of Cooper Green Hospital. Although she was initially hired as a Radiological Technologist in 1993, she assumed the duties of the Senior Radiological Technologist in September of 1995 when the employee holding that position became ill. In March of 1996, the plaintiff was provisionally appointed as the Senior

---

[1] The facts are presented in the light most favorable to the non-moving party, Ms. Montgomery.

Radiological Technologist while a nationwide applicant search occurred to fill this position.

The applicant process at Cooper Green Hospital is governed by the rules and regulations of the Jefferson County Personnel Board, a separate legal entity. All positions at Cooper Green are classified, merit systems and must be filled by open competition. Vacancies are advertised by the Personnel Board and applications must be submitted to the Board. After the time for accepting applications expires, the Board determines who is qualified for the positions through either a written examination or by evaluating the applicant's training and experience. The Board then ranks the qualified candidates in numerical order and provides the certified list to the hospital. The positions must be filled from this certified list.

The job announcement for the Senior Radiological Technician stated that an applicant must have a current registration with the American Registry of Radiological Technologists (ARRT). Further, the announcement advised applicants that "[a]dvanced certification in mammography is preferred."

A list of three certified candidates for the Senior Radiological Technologist position was presented to the hospital on January 10, 1997. The list of candidates listed the plaintiff as the number three candidate.[2] All three of the candidates were interviewed by Morris Maxey, a black male, head of Cooper Green's Radiology Department during January of 1997. The defendants allege that the plaintiff was interviewed a second time by Antionette Smith Epps, Chief Operations Officer of Cooper Green. The plaintiff, however, disputes that she was ever "interviewed" by Ms. Epps.

---

[2]There is some dispute between the plaintiff and the defendantss as to which candidates were ranked number one and two. Regardless, the plaintiff was undisputedly ranked number three.

2

After the interviews were completed, Gwen Calhoun, a black female, was offered the position. Ms. Calhoun has both a basic certification in radiography and the advanced certification in mammography from the ARRT. She has been a practicing radiologist since 1980. Alternatively, the plaintiff has a basic certification in radiography from the American Registry of Radiographic Technologists. However, she has never been registered by the American Registry of Radiological Technologists as having an advanced certification in mammography. The plaintiff asserts that she does have "advanced certification," however, because she successfully completed a training program in mammography from an organization certified by the FDA. The plaintiff has been a practicing radiologist since 1993.

The candidates employment histories were reviewed by Morris Maxey. As noted in Maxey's records, when Calhoun's three former employers that were questioned, two responded affirmatively when asked if they would rehire Calhoun. The third employer, however, said that he would not rehire Calhoun due to her attendance and work quality. The record indicates that the plaintiff also had some problems with her attendance. Because both Calhoun and the plaintiff had attendance problems, the Chief Operations Officer, Antionette Smith Epps stated that the issue was basically "a wash."

The plaintiff was informed that she was not chosen in a letter from Morris Maxey, her supervisor, on January 31, 1997. Once Ms. Calhoun took over the position as Senior Radiological Technologist, the plaintiff was returned to her previous job position.[3] The plaintiff is still employed

---

[3]Some time after Calhoun's appointment, the Personnel Board merged the job titles "Senior Radiological Technologist - Mammography" and "Radiological Technologist" into a new job title, "Special Imaging Technologist." The Special Imaging Technologists all receive the same pay grade. However, because the plaintiff has been employed with Cooper Green longer than Ms. Calhoun, the plaintiff actually earns more per hour than Calhoun. The plaintiff's hourly pay rate is

3

by Cooper Green as a Radiological Technologist and has been the only white Radiological Technologist working under Morris Maxey for most of her employment. She is currently the only white female Radiological Technician employed under Maxey.

As the plaintiff's supervisor, Maxey was responsible for determining work schedules, assigning duties, and supervising the department. The plaintiff alleges that Maxey has treated her differently than the other black technicians by not allowing her to rotate monthly between the more and less desirable procedures, denying her the opportunity to "cross-train," and refusing to allow her to change shifts although he allowed a black technician to do so. The plaintiff also alleges that she informed Maxey of race-based "problems" she was having with the other black technicians and he did nothing in response.

The plaintiff filed this lawsuit on October 17, 1997, alleging racial discrimination under 42 U.S.C. § 1981 and § 1983. The complaint alleges that the plaintiff was not promoted to the position of Senior Radiological Technologist - Mammography at Cooper Green because she is white. The defendants' motion for summary judgment asserts that Ms. Calhoun was chosen over the plaintiff for two reasons: First, the defendants say that the plaintiff was not chosen because Ms. Calhoun was more qualified for the position. Second, the defendants assert that the plaintiff demonstrated a lack of enthusiasm and lack of interest in the position both before and after the interviews that was not observed in Ms. Calhoun.

Anaylsis

Race discrimination cases under 42 U.S.C. § 1981 and § 1983 are analyzed using the same legal framework as in Title VII cases. *See Allen v. City of Athens*, 937 F. Supp. 1531, 1538 (N.D.

---

$17.57. Calhoun's hourly pay rate is only $16.74.

Ala. 1996); *Harris v. Delchamps, Inc.*, 5 F. Supp. 2d 1316, 1319-20 (M.D. Ala. 1998). A plaintiff asserting a race discrimination claim may prove his prima facie case through either direct or circumstantial evidence of discrimination. *Allen*, 937 F. Supp. at 1538. Direct evidence is "evidence of discrimination...which, if believed, would prove the existence of a fact without inference or presumption." *Allen*, 937 F. Supp. at 1538 (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Direct evidence of discriminatory intent is found in such actions as a decisionmaker's discriminatory remarks made in the context of his decision. *See Walker v. Nationsbank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995); *but see Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (stating that not every remark made in the employment context is direct evidence of discrimination). At the summary judgment stage, courts analyze direct evidence under the traditional standards of Federal Rule of Civil Procedure 56.

Circumstantial evidence may also be used by a plaintiff alleging disparate impact to prove his prima facie case. Unlike direct evidence, at the summary judgment stage, the court evaluates circumstantial evidence under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 293 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Allen*, 937 F. Supp. at 1541-42. "The reason for this limited distinction is obvious: 'the entire purpose of the McDonnell Douglas prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by.'" *Allen*, 937 F. Supp. at 1541 (citing *Price Waterhouse*, 490 U.S. at 271). Under the burden-shifting approach, a plaintiff alleging race discrimination in a failure to promote case must first establish a prima facie case establishing "(1) that he is a member of a protected class; (2) that he was qualified and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not

5

members of the protected class were promoted." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997). Once a plaintiff presents his prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *See Burdine*, 450 U.S. at 256-59. If the defendant meets its burden of production, then the burden shifts once again to the plaintiff to show that the employer's alleged non-discriminatory reasons were merely pretexts for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The burden then shifts back to the plaintiff, who must then show that a genuine dispute of material fact exists as to whether the employer's reasons are merely pretext and whether there is enough evidence to support an inference of discriminatory motivation. *See St. Mary's Honors Center v. Hicks*, 509 U.S. 502, 511 (1993).

The plaintiff in this case has not presented direct evidence of discriminatory intent. Therefore, the plaintiff's indirect evidence must be analyzed under the three step *McDonnell Douglas* framework. In this case, the plaintiff has met her burden of proving a prima facie case of race discrimination. Although the defendants dispute that the plaintiff belongs to a protected class, the plaintiff correctly states that "the law has long established that white persons have standing to sue under § 1981." *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986). It is undisputed that the plaintiff was qualified for the position as the Personnel Board's certification of qualified candidates reveals. There is also no dispute that the plaintiff was not chosen for the position. Finally, the position sought by the plaintiff was awarded to a person at least as equally qualified who is not a member of the protected class. The evidence presented by plaintiff is adequate to establish a prima facie case.

Next, the court must look to the defendants' evidence presented to rebut the inference of discrimination created by the prima facie case. At this stage, the defendant have the "exceedingly light" burden of producing legitimate, nondiscriminatory reason(s) for the challenged action. *See Allen*, 937 F. Supp. at 1544-45. Here, the defendants assert that the plaintiff was not promoted for three reasons: (1) Calhoun was more qualified, (2) Calhoun has been performing mammograms since 1980, thirteen years longer than the plaintiff, and (3) the plaintiff demonstrated a lack of enthusiasm and interest in the position. The undisputed evidence in the record shows that the plaintiff had approximately thirteen years less experience as a Radiological Technician than Calhoun. The plaintiff also was not listed by ARRT as having an advanced certification. Although the job notice did not *require* that an applicant be listed with the ARRT as having an advanced certification, the notice stated that it was preferred. Finally, the evidence regarding the plaintiff's "lack of enthusiasm" is disputed by the parties and is somewhat of a subjective determination that arguably does not greatly affect the court's determination. Under the *McDonnell Douglas* analysis, the defendants has met its burden of production.

Since the defendants have satisfied its burden to produce legitimate, nondiscrimnatory reasons for refusing to promote the plaintiff, the burden once again shifts back to the plaintiff to show that the reasons offered by the defendants were pretextual and that the employment action was motivated, at least in part, by discrimination. All reasonable inferences are drawn in favor of the plaintiff.

The plaintiff offers three arguments in support of her position that the defendants' proffered reasons were pretextual. First, she says that it is debatable whether Morris Maxey, the hiring supervisor, actually felt that Calhoun was better qualified than the plaintiff. Although Maxey

7

stated that he felt Calhoun was the superior candidate in general terms, he also testified that (1) there was no aspect of the job that he thought Calhoun was better at, (2) that he personally does not favor ARRT registry in mammography over the type of certification that the plaintiff has, and (3) that the plaintiff had been doing a "good job" in her provisionally appointed position as Senior Radiological Technician. The plaintiff asserts that these facts indicate that Maxey did not feel that Calhoun was the superior candidate.

Second, the plaintiff suggests that Maxey ignored a hospital policy that required applicants with bad references to be disqualified.[4] The plaintiff also dispute the defendants' claim that the plaintiff showed a lack of enthusiasm and interest in the position.

Finally, the plaintiff alleges that Maxey treated her differently than the black Radiological Technicians by assigning her undesirable tasks, not allowing her to rotate jobs, and denied her shift changes. The plaintiff urges the court to find that this evidence, along with the other evidence she has presented, is enough to show that the defendants' proffered reasons are pretextual.

As in *Allen v. City of Athens*, "[c]onceivably, some of the evidence presented by plaintiff could permit an imaginative jury to infer that [the hiring supervisor] harbored racially discriminatory attitudes, but plaintiff has offered no evidence tending to show that those attitudes were a "motivating factor" in [his] decision not to hire [the plaintiff]." 937 F. Supp. 1531, 1546-47. However, the plaintiff's evidence is insufficient to allow a reasonable jury to find that the defendants' decision not to promote the plaintiff was motivated by a discriminatory animus.

---

[4] There is some dispute as to what Maxey told the Chief Operations Officer, Ms. Epps, with regard to Calhoun's previous employment. However, the record indicates that Maxey did check Calhoun's references and at least two of the employers gave positive references. The third and most recent employer of Calhoun apparently commented on her absences and work quality. The defendants point out that the plaintiff also had some attendance problems.

8